**Dean W. Harrison**
**5 Rocky Pasture Road**
**Gloucester, Mass. 01930**
**(978) 283-5614**

Judge O'Toole Civil Clerk
United States District Court
1 Courthouse Way
Boston, Mass. 02210

November 15, 2004

Re: Kadim vs. Adelphia/Cigna

File # 04-12383-GAO

Dear Madam/Sir,

   Enclosed is the following:
 Motion in Opposition to Remove to the U.S. District Court

   As stated in the motion filed by undersigned, the claim by Plaintiff's of approximately
$15,000.00, is hardly the stuff of a U.S. District Court action. U.S. Congress in its
wisdom made cases of this type subject to concurrent jurisdiction, obviously
understanding that the Federal Courts should not be burdened with actions that are not of
Federal import or complexity, no matter how anguishing they might be to a Plaintiff.

   By the way, the Gloucester District Court Judge allowed the filing without payment of
the usual fee because of my representation of her state of indigency. She simply cannot
afford to travel to Boston, so far away from her children, and she can walk to the
Gloucester Court from her mother's home.    I have offered a settlement of the payment
of the amount owed for disability without any fee to me, and that offer still stands even
though my time charges are now reaching approximately $5,000.00. I would not take
any fee for my services, relying on the 93A charge for my fees were it to go to trial and
not taking any fee for a full settlement made soon.

   In conclusion, I seriously doubt that in the entire U.S. District Court history has there
been a case involving $15,000.00 on a charge of improper denial of a disability claim.
The count on wrongful termination lies in state law.    No need to start now and
experienced attorneys representing a powerful corporation against an indigent Plaintiff
should not escape from what they fear for whatever reason and force her into the expense
(not to mention the burden on the U.S. Court) and complexity of a Federal Court. As
mentioned in the motion, Adelphia has an office in Gloucester in which Plaintiff Kadim
worked and the insurance policy issued by Defendant Cigna covered her there. What is

the mystery or wrong of a State District Court judge trying a civil case without a jury here where the locus is correct and apparent. In order that the U.S. District Court judge feel more secure in denying the removal, I am today filing an amendment to my complaint deleting on page 2 first paragraph entitled Parties and Jurisdiction starting with the words "claims under…" and ending with the words "as is the case herein". Thus, no ERISA claim now will exist. By the way no claim under ERISA was made against Cigna, and so presently they have no standing to assert the removal, but I will obviate any such claim in the future and not burden this court further. I shall send you a copy of the amended complaint for your records. ( copy enclosed )

Sincerely,

Dean W. Harrison

# SERVICE AFFIDAVIT

Attorney Dean W. Harrison states under penalty of perjury that he has transmitted the accompanying letter and Motion to Deny Removal to attorneys representing Cigna Group by first class mail postage prepaid on November 15, 2004 *(Amended Complaint also enclosed)*

_____
Dean W. Harrison

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| PAULA KADIM )<br><br>Plaintiff, )<br><br>v. )<br><br>ADELPHIA )<br><br>CIGNA GROUP INSURANCE )<br>And its affiliate Company LIFE )<br>INSURANCE OF NORTH AMERICA )<br><br>Defendants ) | **U.S.D.C. Civil Action No. 04-12383-GAO**<br>**Opposition To**<br>**Removal from Gloucester District**<br>**Court Civ No. 0439CV270** |

## MOTION OPPOSING REMOVAL TO
## U.S. DISTRICT COURT

Plaintiff Paula Kadim by her attorney opposes removal of her case from a Gloucester District Court, the court of the people, to the U.S. District Court on the following grounds:

1. The claim is for approximately $15,000.00 and has no exclusive Federal jurisdiction. Plaintiff Kadim worked in Gloucester at the Adelphia office and was covered by Cigna for disability claims.
2. There has not been any claim of ERISA violations against Defendant Cigna
3. The welfare Plan argument by Cigna before this court has not been fleshed out but merely suggested, and with "concurrent jurisdiction", this court has discretion to leave the case where it properly resides.
4. If the ERISA violations alleged against Adelphia, and not the moving party Cigna, are sufficient to the U.S. District Court judge to remove it, then the undersigned attorney will dismiss that particular allegation and rely on a common law claim under appropriate fiduciary principles which confer noU.S. Court jurisdiction. ( *see enclosed Amended Complaint*)
5. Should the honorable judge decide to approve the removal, we are ready to try this case now, and request that we proceed as soon as the next few weeks. Our trial presentation will consume an hour or two.

Respectfully submitted on behalf of Plaintiff Paula Kadim, by her attorney

DEAN W. HARRISON
BBO #223700
5 Rocky Pasture Road
Gloucester, Mass. 01930
Telephone (978) 283-5614
Email  ndharri@earthlink.net

ESSEX, ss.

GLOUCESTER DISTRICT COURT
DOCKET # **0439 CV 270**

```
                                    )
PAULA KADIM                         )
    Plaintiff,                      )
                                    )
v.                                  )          **AMENDED**
                                    )          **COMPLAINT**
ADELPHIA                            )
                                    )
CIGNA GROUP INSURANCE               )
and its affiliate Company LIFE INSURANCE )
OF NORTH AMERICA                    )
    Defendants,                     )
                                    )
                                    )
                                    )
```

This action arises out of Plaintiff's claim for long term disability payments against Defendant Life Insurance Company of North America/Cigna Group Insurance Company ("Cigna") as insurance carrier, while Plaintiff was employed full-time by Defendant Adelphia. Plaintiff also alleges breach of fiduciary behavior by Defendant Adelphia while acting as employer.

Plaintiff Kadim also in maintains her action for violation of her civil rights in the discrimination by her employer Defendant Adelphia for wrongful acts in denial of her rights and illegal termination of her employment.

Plaintiff Kadim is maintaining her action against Defendant Cigna by reason of its failure as insurance carrier to act properly under state law when, without reasonable investigation of her claim, arbitrarily denied disability income rights under its contract.

## A. PARTIES AND JURISDICTION

Plaintiff Kadim under Section 93A under Commonwealth Law claims consumer fraud by both defendants and asks treble damages and her attorney fees.

Fiduciary behavior, or rather misbehavior of Adelphia, occurred under duties of well recognized standard of care owed to a beneficiary under the laws of the Commonwealth where such well-recognized legal principles were originally forged and then codified under ERISA. Both Defendants are authorized to conduct business in the Commonwealth and were conducting such business when the alleged fraudulent acts and breach of contract occurred. Both parties have been warned of their alleged misbehavior in detailed writing by Plaintiff's Attorney pursuant to customary business and legal practice and as required by Section 93A. Both Defendants have responded with insufficient defenses. Action is also brought against both Defendants for violation of Plaintiff's civil rights under Massachusetts Laws and its Constitution.

## B. FACTS

(1) Adelphia is a communications and cable TV company operating at the 38 Blackburn Drive in Gloucester, Ma. 01930, and entered into a disability insurance contract with Defendant Cigna covering Adelphia's employees, one of which was Plaintiff Kadim. Defendant Cigna operates in Massachusetts and has an out of state address at P.O Box 22325, Pittsburgh, PA. 15222-0325. Defendant Adelphia chose to be the Plan Administrator responsible for all fiduciary requirements under both ERISA and Massachusetts's common law.

(2) Defendant Adelphia is presently in reorganization under Chapter 11of the U.S.

Bankruptcy Laws, and several of its former key executives and shareholders have been convicted of violating U.S. securities laws, among others.

(3) Defendant Adelphia from April 2000 to July 2004 employed Plaintiff Kadim as a Customer Sales Service Representative. While so employed Plaintiff Kadim on May 28, 2003 slipped and fell on the company premises. It is believed that such a fall precipitated and caused the injury at issue in this case and from which the disability claim arose.

(4) Plaintiff Kadim continued to work daily, but as time went on she increasingly began to experience pain in her back until approximately the late part of October 2003. The pain became more severe and on November 5, 2003 she requested a Medical Leave of Absence for a period of twelve weeks ending on January 28, 2003. She requested disability payments during the same time as the medical leave and asked for a medical determination of short-term disability.

(5) On the day before Christmas 2003, the claim was denied by Defendant Cigna, stating that not enough medical documentation existed to support a claim for a sedentary position. No details were furnished outlining the lack of documentation or action recommended by either Defendant. During the time between the period of November 2003 and December 24, 2003 Plaintiff Kadim was under the care of M.D. Janet Doran and a licensed physical therapist Connie Murphy. She was advised not to return to work by her physical therapist, but Plaintiff Kadim because of financial need at this time returned to work. In a letter dated December 19, 2003 Dr. Doran stated Plaintiff has been undertaking treatment but "she has been entirely unable to work at this time and is still in considerable pain though with slight improvement."

(6) As mentioned above Plaintiff Kadim out of necessity did return to work from approximately December 31, 2003 until January 21, 2003. When the pain became so unbearable, she was required to begin more intense treatment. On January 23, 2003 Dr. Doran had ordered a MRI, stated in a work-related note " Out of work until further notice" and referred her to a spine specialist.

(7) On January 26, under M.D. Richard Ozuna, results from the MRI were discussed. The MRI findings revealed: "There is desiccation of the L3-4 and L4-5 discs with mild loss of height and loss of central bright T2 signal.    L3-4 there is a mild diffuse disc bulge. At L4-5 there is a small central and slightly left paracentral disc herniation. This exerts mild to moderate mass effect on the thecal sac approaching the left L-5 nerve root in the lateral recess but without definite compression. At L5-S1 there is little to no bulge with no focal herniation or significant mass effect. There is minimal inferior foraminal narrowing bilaterally." The diagnosis given by Dr. Ozuna is "1) degenerative disc disease L4-L5 greater than L3-L4 2) lower back pain 3) diffuse bilateral lower extremity numbness".

(8) At this point treatment was to be a set of facet shots to be administered by the Hunt Hospital pain clinic. Plaintiff Kadim had appointment set up for four days later. In February 2004 Plaintiff Kadim had facet shots administered with little relief for the back pain.

(9) Upon re-evaluation on March 12, 2004 pain was becoming worse and extending into the lower left extremity. Diagnosis at this point according to Dr Ozuna was to "place her on Ultram as well as recommend that she undergo epidural steroid injections at the

L3-4 level to one in fact the L3-4 level as well as it may be at the L4-5 level". Based on her weakness, he stated that he would have to see her sooner than earlier anticipated.

(10) On March 18, 2004, in a letter addressed to Cigna from Dr. Ozuna states that "Based on her most recent exam she continues to be temporarily disabled from her current occupation. I understand that there has been some question of whether she has been totally disabled since her injury in late October. It is my medical opinion that she has been TOTALLY DISABLED" (emphasis added). He then states that "If there is any question regarding this I would suggest that Cigna Insurance certify a functional capacity evaluation for her to confirm if she is capable of some gainful employment. I'm sure that this capacity function evaluation will reveal she is UNABLE TO PERFORM HER WORK DUTIES"(emphasis added).

(11) Reacting on his advice On March 26, 2004 Plaintiff Kadim returned to see Dr. Ozuna for a follow up from the epidural. " She has grade 1 weakness in her left DHL and tibialis anterior. The remainder of the exam is unchanged. She has moderate left buttock tenderness". "Ms. Kadim's symptoms have not improved and her weakness has slightly worsened. I do feel she is a reasonable candidate for micro discectomy. We discussed the risks and benefits of this including nerve injury and infection".

(12) On April 6, 2004 an L4-5 left sided microdiscectomy was preformed at the Lynn Union Hospital. Follow up two-week appointment shows "she states leg pain is nearly completely resolved. She has some achiness in her back but denies any fevers, chills or wound drainage". "Incision well healed. Normal motor exam with the exception of Grade weakness in her left tibialis anterior, which was present preoperatively. Sensation was normal".

(13) On May 15, 2004 Plaintiff Kadim had what was most likely lumbar strain or some irritation on her facet joints. Dr. Ozuna gave her a medrol dose pack and ordered blood tests to rule out infection, Follow-up appointment in one month.

(14) On June 11, 2004 Plaintiff Kadim returned for her follow-up.  Dr. Ozuna discontinued physical therapy and recommended a home exercise program. "She is doing well at this point" and he progressed her to normal activities and her final follow-up will be on August 2, 2004. The Doctor finally declared her fit to work and Plaintiff has been and remains able to work since August 2, 2004 but has been paid no disability income up to that point. Defendant Cigna has denied all pleas.

(15) Defendant Cigna ignored Dr. Ozuna's request for the evaluation and in a letter dated May 12, 2004 made what was termed a final denial.  While admitting that: "However, it was discovered that some additional information that you submitted as part of that appeal was not included in our previous reviews. Therefore, we reviewed that information in order to determine if it would change the outcome of the April 6, 2004 determination. Defendant Cigna had the additional information reviewed again with one assistant medical doctor, denied benefits and closed the case.

(16) Plaintiff Kadim was never told who the medical doctor was, never saw him or her and was never contacted for an evaluation. The burden of which was upon Defendant Cigna to dispute legally and professionally this finding especially considering the statement of Dr. Ozuna that Plaintiff Kadim was "totally disabled" and his evaluation showed she is "unable to perform her work duties."  The expert, Dr. Ozuna, who evaluated her and operated on her stated categorically that she was disabled back on March 18, 2004. Lending credence to his conclusion, she was operated on after that date,

6

and has been disabled until recently when Dr. Ozuna on August 2, 2004 finally cleared her for duty. She is now ready and able to return to work as an employee. Defendant Cigna chose to deny the disability claim based on a lay person's review and backed up by some unidentified medical employee. Cigna ignored a serious request by a licensed physician to perform an examination or evaluation personally and took the action of determining facts without first having a medical determination, tantamount to unprofessional, negligent and arbitrary behavior. Defendant Cigna ignored and failed to respond to the operation on her back or its effects and indeed attempted to ignore its very existence, apparently hoping that her claim would go away and that she would lack the will or resources to pursue legal rights.

(17) During this entire period Defendant Adelphia idly sat on its hands and ignored its fiduciary duty it assumed when it became Plan Administrator. There was no attempt by Defendant Adelphia to give reasonable or any advice to Plaintiff Kadim. There is no evidence on the record or outside it that demonstrates even a scintilla of assistance. Indeed, the employees were precatory in the extreme in pointing out then they were not allowed to offer any advice or assistance. Plaintiff Kadim had zero experience in disability claims, and was totally confused as to what it was the Defendant Cigna was looking for, especially when Plaintiff Kadim kept furnishing the medical data. Certainly Defendant Adelphia knew or had reasonable reason to know the level of details Defendant Cigna was requiring but violated its fiduciary duty by remaining mute and pretending to be thoughtful and managing to be only negligent. Even setting aside for a moment the clear duties of fiduciary responsibilities to its beneficiary under both ERISA and common law, a modicum of assistance under customary employment relations is

7

appropriate and owed, and no employee is required to be engaged in some form of guess work or twenty questions in order to receive her due from the employer he or she relies upon for expertise. It is not an unusual circumstance for a company to be in extremis these days, as is the case with Adelphia, along with employees to fear of losing their jobs. It is especially common in cases and is actionable where criminality and corruption occur in the highest echelons, where ordinary employees are the first to experience "off with their heads" mentality, and it is rare indeed when one dares to be the messenger with tidings of bad news. No saviors came forward, no whistle blowers emerged, and the violation of at least one person's rights, wrongs to Plaintiff Kadim continue unabated to this day.

(18) Defendant Kadim is now without a job, without a cent in disability income and is now claiming state unemployment compensation payable at reduced levels because of no employment income since January 2004. A single mother with two children and an ex-husband behind on his support, she is relegated to a state of penury, reliant on parents (including stepfather) to assist her and her children to provide creature comforts for the family. She is presently searching for a new job in a bad market for her family sustenance and to minimize damages claimed herein by reason of her wrongful termination of employment by and with attendant violation of her civil rights by Defendant Adelphia.

## C. COUNTS

### (Count I -- Violation of Contractual obligations.)

(19) Plaintiff hereby adopts and incorporates by reference as if fully stated herein the allegations contained in paragraph (1) through (18).

(20) Defendant Cigna as Insurance carrier are responsible for lawful claims filled against it for disability payments owed to employees of Adelphia who file and prove their case.    Plaintiff Kadim relied on such a contract, fulfilled all responsibilities as an employee, filed appropriate documentation, and was totally disabled for the period in question and entitled to recover such amounts.    Defendant Cigna acted arbitrarily, illegally and fraudulently in violation of its contract and is responsible for damages under the contract and under 93A for consumer fraud.

### (Count II – Violation of Civil Rights and Breach of employer–employee laws.)

(21) Plaintiff Kadim hereby adopts and incorporate by reference as fully stated herein the allegations contained in paragraph (1) through (18).

(22) Defendant Adelphia discriminated against Plaintiff Kadim under appropriate employees and rights, denying her equal protection under the law.    It failed to obey ordinary standards of care as an employer.

### (Count III – Breach of Fiduciary Duty)

(23) Plaintiff Kadim hereby adopts and incorporates beneficiary fully stated herein the allegations contained in paragraphs 1 through (18).

(24) Defendant Adelphia violated its affirmative duty of advising and assisting beneficiary Plaintiff Kadim so violated the standard established under Common Law.

### (Count IV -- Breach of employment contract)

(25) Defendant Adelphia lacked the ordinary care owed Plaintiff Kadim under employment/employee relations and assisted and abetted denial of claims of disability by Plaintiff Kadim, improperly and illegally terminated her employment by assisting in the demand of disability income payments. This action had the effect of abridging her term of employment under the pretext and guise of assisting in the denial of workman's compensation rights, disability income and she was constructively discharged without pay or benefits.

### D.  PRAYERS FOR RELIEF

Plaintiff Kadim respectfully requests the following relief.

(1) Money damages for disability income.

(2) Treble damages and attorney's fees under 93A;

(3) Costs of suit award of attorney's fees;

(4) Such other relief as the Court deems just.